UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARREN MACLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11 C 2986 |
| | ) |
| SHERIFF OF COOK COUNTY, and | ) Judge Rebecca R. Pallmeyer |
| COOK COUNTY OF ILLINOIS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On January 13, 2009, Plaintiff Darren Maclin was assaulted by fellow inmates at Cook County Jail and then injured further when an unnamed correctional officer dragged him down several flights of stairs. On May 4, 2011, he filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Sheriff Thomas Dart, in his official capacity, and Defendant Cook County (collectively "Defendants"). Cook County and its Sheriff are liable only if Plaintiff's injuries are a product of official policy. Because Plaintiff has not presented evidence that creates a dispute of fact on that issue, Defendants are entitled to summary judgment.

## FACTUAL BACKGROUND

### I. The Record

Consistent with the court's local rules, Defendants filed a Statement of Material Facts along with their summary judgment motion, citing evidentiary material in support of each statement. (Defs.' Rule 56.1 Statement [53], hereinafter "Defs.' 56.1.") Although Maclin responded to Defendants' summary judgment motion and their Rule 56.1 statement, he failed to submit any statement of additional facts; such a statement is the only method, under this court's local rules, for presenting additional facts that require denial of summary judgment. N.D. Ill., R. 56.1(b)(3)(C); *see Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995). Further,

Maclin responded to Defendants' 56.1 by agreeing that each of its 33 paragraphs is true. (Pl.'s Local Rule 56.1(b)(3)(A) Statement [56], hereinafter "Pl.'s 56.1.") For these reasons, the facts in Defendants' 56.1 statement, where supported by record evidence, are deemed admitted and constitute the record upon which summary judgment will be resolved. *See* N.D. Ill., R. 56.1(b)(3)(C) ("All material facts set forth in the statement required by the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.")

## II. The Incident

Plaintiff Darren Maclin entered the Cook County Department of Corrections ("CCDOC" or "the Jail") in April 2008 as a pre-trial detainee. (Defs.' 56.1 ¶ 1.) Throughout his detention there, Plaintiff was assigned to Cell 9 in Division I, Tier D-4 of the Jail. (*Id.* ¶ 2; Maclin Dep., Ex. 1 to Defs.' 56.1, at 13:5–14:18.) Tier D-4 consists of a low side with cells numbered one through nine, and a high side with cells numbered ten and up. (Defs.' 56.1 ¶ 6.) Together, these cells make up a corridor that surrounds the Tier's "dayroom," a space where detainees congregate when not confined to their cells. (*Id.* ¶ 6; Maclin Dep. at 37:11–38:7.)

On January 13, 2009, Officer Mahari Davis was assigned to monitor Tier D-4 from 3:00 p.m. to 11:00 p.m. (Defs.' 56.1 ¶ 20.) Shortly after Officer Davis came on duty, he escorted all of the residents of Tier D-4, including Plaintiff, to the gym located in the basement of Division 1. (*Id.* ¶ 7.) Approximately 45 minutes later, Officer Davis walked the detainees back to Tier D-4. Neither Plaintiff nor Officer Davis observed anything out of the ordinary during the recreation period or the walk back to the Tier, and there were no fights or arguments between the detainees during this time. (*Id.* ¶¶ 9, 10, 21, 22.) Upon their return at approximately 5:00 p.m., Officer Davis instructed half of the detainees to return to their cells and allowed the others to remain in the dayroom. (*Id.* ¶ 23.) After delivering this instruction, Officer Davis relocated to the "bubble"—a space specially designed to allow guards to observe the dayroom and the detainees' cells simultaneously. (*Id.* ¶¶ 5, 6.)

2

Plaintiff was one of the detainees directed to remain in the dayroom. Once he got back to Tier D-4, Plaintiff went to the bathroom to wash his face and then sat down at a table to observe two of his fellow detainees playing chess. (Maclin Dep. at 36:17–37:16.) When that game was over, Plaintiff took the seat of the (unidentified) inmate who lost the match, preparing to take on the winner (also unidentified). (*Id.* at 37:16–18.) Shortly after this chess match began, another unidentified detainee stabbed Plaintiff in the back, causing him to fall to the floor. (*Id.* ¶ 14.) Plaintiff tried to protect himself with his arms while additional detainees attempted to either stab or beat him. (*Id.* ¶¶ 15, 16.) Plaintiff cannot identify any of his assailants (*Id.* ¶ 16; Maclin Dep. at 47, 48), but he believes the knives used in the incident were "homemade." (Defs.' 56.1 ¶ 16.)

Meanwhile, from the bubble, Officer Davis observed "numerous detainees fighting with each other," several of them "holding what appeared to be home-made weapons, including broom handles." (Davis Aff., Ex. 2 to Defs.' 56.1, ¶ 7.) Davis responded initially by calling a "10-10" (code for a fight between detainees) on his radio to summon backup (*id.* ¶ 8); then, on further observation, Davis got back on his radio and called for all available correctional staff to descend on Tier D-4 immediately to put down a "riot." (*Id.* ¶ 9.) Officer Davis never left his assigned post in the bubble during the incident. (*Id.* ¶ 31.) Within two minutes of Officer Davis's call for backup, several officers and supervisors arrived on the scene and put an end to the hostilities. (*Id.* ¶ 10.) At this point, Plaintiff was able to separate himself from his attackers and make his way into a nearby cell where unidentified officers and supervisors soon discovered him bleeding from multiple stab wounds. (*Id.* ¶ 17.) Plaintiff testified that, despite his visible injuries and his complaints of dizziness and inability to breathe, an unidentified officer roughly "dragged" him, in handcuffs, downstairs, and "threw [him] on the floor in the basement." (*Id.* ¶ 12; Maclin Dep. at 53:10–54:8.) Once in the basement, medical staff removed Maclin to nearby Stroger Hospital where he remained for the next two days to receive treatment for his injuries. (Defs.' 56.1 ¶ 18.)

3

Upon his release from the hospital, Plaintiff returned to the CCDOC where he received additional medical attention in the Division 10 infirmary. (*Id.* ¶ 19.) Finally, Maclin was transferred to an unidentified facility operated by the Illinois Department of Corrections. (*Id.* ¶¶ 18, 19.) Maclin never returned to Division 1 at the CCDOC after the incident. (Maclin Dep. at 59:12–14.)

### III. This Lawsuit

Plaintiff pleaded guilty to the charges he faced in 2009 (burglary and armed habitual criminal) (Maclin Dep. at 11:1–6), and is currently confined in the Western Illinois Correctional Center. (Maclin Dep. at 4:22–24.) He filed this § 1983 suit against Cook County and its Sherriff on May 4, 2011.[1] (*Id.*) Defendants seek summary judgment on all of Plaintiff's claims.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To defeat a motion for summary judgment, the non-moving party must produce more than a "mere scintilla of evidence"; there must instead be "evidence on which [a] jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In considering the record on such a motion, the court "view[s] all facts and draw[s] all inferences in the light most favorable to the non-moving party." *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). The court, is not, however, required to draw inferences based on mere speculation or conjecture. *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). When a summary judgment motion is submitted

---

[1] The two-year statute of limitations for claims under § 1983 is tolled during the pendency of prison grievance proceedings—which allegedly ended in this case on May 2009. (Compl. [1] ¶ 10.) *See Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008), citing *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001).

and supported by evidence, the nonmoving party may not rest on mere allegations or denials in its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) (citing *Anderson*, 477 U.S. at 250). If the opposing party fails to establish the existence of an element essential to that party's case, the moving party is entitled to a judgment as a matter of law. *Ball*, 723 F.3d at 833 (internal quotations omitted).

## II. § 1983 Claim

The individuals who allegedly harmed Plaintiff are not before the court. Instead, Plaintiff has named as Defendants only Cook County and Sheriff Tom Dart in his official capacity. As is well recognized, whether Cook County or Sheriff Dart is liable for constitutional violations by correctional officers is a matter governed by the *Monell* doctrine. *See Walters v. City of Chi.*, 580 F.3d 575, 580 (7th Cir. 2009) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). Under that doctrine, a plaintiff can establish that a local government is liable for a constitutional violation only if he can demonstrate that the deprivation occurred as a result of an official policy, custom, or practice—that is, he must show that the violation was (1) pursuant to the enforcement of an express policy; (2) the product of a "wide-spread practice" which is "so permanent and well-settled" as to create a custom or policy; or (3) caused by a person with "final decision policymaking authority." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citing *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995)). The plaintiff must further show that "an official policy or custom not only caused the constitutional violation, but was the 'moving force' behind it." *Estate of Sims v. Cnty. of Bureau*, 505 F.3d 509, 514 (7th Cir. 2007). Where the alleged constitutional deprivation resulted from an implicit rather than an explicit policy, plaintiff must present evidence of a widespread practice, not simply a random or isolated event. *Calhoun*, 408 F.3d at 380. To become widespread, the practices must be "so pervasive that acquiescence on the part of the policymakers was apparent and amounted to a policy decision." *Phelan v. Cook Cnty.*, 463 F.3d 773, 790 (7th Cir. 2006).

Plaintiff's complaint does assert that various policy decisions made by Defendants resulted in the "depriv[ation] of [his] constitutional rights to safe and humane conditions of confinement." (Pl.'s Compl. ¶ 6(f).) The complaint identified four alleged policies or practices at the CCDOC that, he claims, led to this deprivation: (1) overcrowding at the Jail "increased the number of fights among inmates"; (2) underfunding led to a shortage of officers, which required individual officers to monitor multiple tiers (i.e., "cross-watching"); (3) understaffing left officers overworked and, therefore, more likely to resort to excessive force against detainees; and (4) these funding and staffing limitations led officers to act with deliberate indifference toward detainees' medical needs. (*Id.* ¶ 6(a)–(f).) Maclin has now withdrawn the cross-watching claim. (Pl.'s Resp. at 2.) For the reasons explained below, the court concludes that the evidence does not support his claims relating to other alleged policies, either.

In response to the motion for summary judgment, Maclin has offered no evidence concerning the jail population, the alleged funding shortages, or the resulting lack of staff. Nor has he offered other evidence to show that the assault by other inmates, or the rough treatment he suffered after the assault, was the product of any policy, explicit or implicit, on the part of the County or the Sheriff. Instead, in contesting Defendants' motion, Plaintiff merely argued that Defendants had not established the absence of any genuine issues of material fact on his claims. (Pl.'s Resp. at 2.) This argument misrepresents Defendants' memorandum and Plaintiff's own burden to respond to the motion for summary judgment. The facts are essentially uncontested: the only incident in the record is the attack on Maclin himself, and the alleged harsh treatment that followed it. This alone is insufficient to support a § 1983 claim. Defendants explicitly argued that summary judgment is warranted because a single episode of injury and rough treatment do not add up to "evidence of widespread practice or policy-making actions by Sheriff Dart or Cook County." (Defs.' Mem. at 5.) Plaintiff has failed to offer so much as a theory, let alone any evidence, that would suggest his injuries were the result of a practice or pattern of activity by Defendants or that any such pattern existed. *See Butera v. Cottey*, 285

F.3d 601, 608 (7th Cir. 2002) (finding that the failure to show that any injury, other than the plaintiff's, had occurred as a result of the policy-in-suit was "fatal" to plaintiff's claim). Because Plaintiff has not established the existence of an element essential to his case, Defendants are entitled to a judgment as a matter of law

No pretrial detainee should be subjected to an unprovoked attack, nor should any jail official drag an incapacitated inmate down a flight of stairs. On this record, however, there is no basis on which to hold Defendants liable for the wrongdoing.

## **CONCLUSION**

Defendants' Motion for Summary Judgment [51] is granted.

ENTER:

Dated: March 24, 2014

REBECCA R. PALLMEYER
United States District Judge